## ALLEN AUTO SPECIALTY CO. v. BAKER.

(Circuit Court of Appeals, Second Circuit.   December 14, 1915.)

### No. 124.

PATENTS ⬿328—INVENTION—COVERING FOR AUTOMOBILE TIRES.

The Nathan patent, No. 799,662, for a covering for automobile tires, designed to protect spare tires when carried on a machine from rain and dust, *held* void for lack of patentable invention.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the Allen Auto Specialty Company against E. G. Baker.   Decree for complainant, and defendant appeals.   Reversed.

The decree of the District Court held valid and infringed claim 1 of letters patent No. 799,662 granted to Benjamin Nathan on September 19, 1905, for a covering for automobile tires.

Cyrus N. Anderson, of Philadelphia, Pa., for appellant.

Howson & Howson, of New York City (Hubert Howson, of New York City, of counsel), for appellee.

Before COXE, WARD, and ROGERS, Circuit Judges.

COXE, Circuit Judge.   The patent in controversy relates to covers for inclosing tires for automobiles or other vehicles and is designed to protect the extra tires carried on the vehicle from the deteriorating effects of rain and dust.   The claim which sufficiently describes the patented device is as follows:

"A cover adapted, when closed about a tire, to form an annular tube, the opening to receive the tire being from the front and all exposed edges of the cover in its closed or tubular form being overlapped in the same general direction, to shed rain when the cover and its inclosed tire are hung up."

The wisdom of inclosing the extra tires carried on motor cars was apparent from the beginning of their use and cases of waterproof material were early adopted for the purpose.   It required no inventive skill to discover that if rain were to be excluded the upper flap of the cover must overlap the lower flap, otherwise the water would find its way between them and would soon reach the inclosed tire.

At the date of the application, December 20, 1904, the principle of overlapping for the purpose of shedding water was as old as shingled roofs.   To keep an object dry it is necessary to cover it so that the joints of the inclosing material are water tight and do not permit the water to find its way between them to the interior of the covering. As is said by the District Judge:

"In this way, when the tire is kept upright, there is no crack in the tire cover which will not shed the rain.   At both top and bottom the cover presents the familiar overlap which is used in so many devices for shedding rain."

Evidently the learned judge was in doubt on the question of invention for he says:

"Of course, I need not say that it was the commonest expedient to put a flap over the part where you wanted to shed the rain. We are all familiar with that, in a hundred different situations."

We cannot agree with him that it required more than the skill of the mechanic to apply a well known method of keeping out rain to a new article. The material and the method of using it were at hand and all that was necessary was to adapt and apply them to the new object—a suit case, a shoe, a carriage top or a tire cover. The method of keeping out rain by waterproof or water shedding joints was concededly old, and Nathan's problem was to apply the well known principle to a rubber tire case. The prior art told him, what was indeed a perfectly obvious fact, that if the upper flap of the case is so fastened that its edge covers the lower section, the rain as it descends will be carried down past the inner edge and therefore no water can reach the tire inside the case. No one with such a problem to solve would think of having the lower edge overlap the upper edge for immediately a groove would be formed which would stop the flow of the water and permit a large part to find its way into the inside of the case. It would seem that no one possessing even a limited amount of mechanical skill would think of leaving this opening to the inner side of the covering entirely unprotected; as well might one begin to shingle a roof from the top. Such coverings or guards as Nathan describes were constantly made in garments and analogous structures to keep out rain and were well known at the date of his application.

The moment the advisability of keeping the rubber tires free from rain was apparent, it would, we think, have occurred to the ordinary mechanic to cover the sections so that the water would pass beyond the inner folds and not be delivered to the inside of the case. It is difficult to imagine a mechanic of ordinary intelligence who would leave the passage open when the obvious and natural thing to do is to cover it.

The decree is reversed with costs.